IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VOLTSTAR TECHNOLOGIES, INC. ) <br> f/k/a HORIZON TECHNOLOGIES, INC., ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> AMAZON.COM, INC., ) <br> ) <br> **Defendant.** ) | No. 13 C 5570 <br><br> Judge John Z. Lee |

## MEMORANDUM OPINION AND ORDER

Plaintiff Voltstar Technologies, Inc., formerly known as Horizon Technologies, Inc., ("Voltstar") sued Amazon.com, Inc. ("Amazon") for patent infringement of United States Design Patent No. D587,192, entitled "Electrical Charger." The parties have filed cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth herein, the Court denies Plaintiff's motion and grants Defendant's motion.

### Factual Background

Unless otherwise noted, the following facts are undisputed. Voltstar is an Illinois corporation that manufactures wall plug accessory products used to charge devices made by other manufacturers, including the Mini Charger, which is sold on Amazon.com and can be used to charge Amazon products. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 1-4. Amazon is a Delaware corporation with a principal place of business in Seattle, Washington. *Id.* ¶ 7. Amazon is known for its e-readers, sold under the Kindle brand, and also sells a charging accessory that can be used with its e-readers. *Id.* ¶¶ 8-9.

Voltstar filed for a design patent for the Mini Charger on November 27, 2007, which was issued on February 24, 2009. *Id.* ¶ 11. The patent claims a single embodiment shown in the following figures:



*Id.* ¶¶ 13-16.

The accused charger was designed by Amazon in spring of 2008 and released to the public in March 2009. It is subject to its own design patent, U.S. Design Patent No. D611,409. *Id.* ¶¶ 17-18. The patent claims a single embodiment shown in the following figures:



2

Dkt. 27, Ex. B.

Both the Voltstar and the Amazon patent are presented as computer-aided design ("CAD") drawings. Pl. LR 56(b)(3) Stmt. ¶¶ 27, 33. In the design community, CAD is thought to be the most accurate way of communicating a design. *Id.* ¶ 39. A CAD line represents a change in the surface being drawn, but does not represent a break in that surface. *Id.* ¶ 31. Additionally, design patents do not have noted dimensions, allowing them to be enlarged or reduced in most manners so long as the proportional relationships do not change. *Id.* ¶ 36. All features depicted in the design patent drawings are ornamental in nature, except for the two blades used to power the chargers by plugging them into a power source and the USB port used to charge an electronic device located on the other side. *Id.* ¶ 22. The USB ports themselves are functional; however, their location is ornamental so long as the product can be used as intended. *Id.* ¶ 23.

Though there are thirty-six references cited between Voltstar's and Amazon's patents, the parties agree that, for purposes of summary judgment, the closest prior art is U.S. Design Patent No. D583,316, as pictured in the figures below. *Id.* ¶ 44.



Dkt. 43, Ex. 17.

## Discussion

**I.      The Legal Standards**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772-73 (7th Cir. 2012). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statements." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). If a proposed statement of fact is properly supported by the record and not adequately rebutted, the Court will accept the statement as true for the purposes of summary judgment. *See Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997, 1006 (N.D. Ill. 2010). An adequate rebuttal must include a citation to specific support in the record. *Id.*

A design patent protects all ornamental features of a product, excluding those that are functional in nature. *See Elmer v. ICC Fabricating, Inc.,* 67 F.3d 1571, 1577 (Fed. Cir. 1995). Patent infringement occurs when there is an application of "the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale . . . ." 35 U.S.C. § 289. In

deciding whether there has been an infringement, the Court must inquire "whether an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008). This inquiry necessitates a three-way visual analysis between the patented design, the accused design, and the prior art. *Id.* While verbal claim construction may sometimes be helpful in certain circumstances, "[g]iven the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Id.* at 679. The designs should be compared visually to each other using the patent drawings, not their commercial embodiments. *See Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993). During this analysis, infringement can be found even if the accused and patented designs are not identical. *See OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).

Courts have treated the test for design patent infringement as a two-step process. First, a plaintiff claiming infringement must make a threshold showing that the accused and patented designs are not "sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer." *Egyptian Goddess*, 543 F.3d at 678; *see Competitive Edge*, 763 F. Supp. 2d at 1012 ("[w]hen the patented design and the accused design are plainly dissimilar . . . there is no need to look to the prior art"). Second, "when the claimed and accused designs are not plainly dissimilar, resolution of the question of whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art." *Egyptian Goddess*, 543 F.3d at 678; *see Wing Shing Prods. (BVI) Co.*

*Ltd. v. Sunbeam Prods., Inc.*, 665 F. Supp. 2d 357, 362 (S.D.N.Y. 2009) (there are two levels to the infringement analysis: a first level or "'threshold' analysis to determine if comparison to the prior art is even necessary, and a second level analysis that accounts for prior art in less obvious cases").

## II.  Side-by-Side Analysis of the Claimed and Accused Designs

A side-by-side analysis of the patents must focus on the "overall ornamental visual impression" of the accused and patented designs. *See OddzOn Prods.*, 122 F.3d at 1405; *see also Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 104 (Fed. Cir. 1996) ("A proper interpretation of [the patentee's] claimed design focuses on the visual impression it creates").

To the ordinary observer, a side-by-side comparison would yield the conclusion that the two products create a substantially different visual impression. Voltstar's patent depicts a product that has two flat sides joined together by shallow arcs at points that have the appearance of rounded corners. This creates the impression of a squat product that is approximately twice as wide as it is tall. Amazon's product, on the other hand, is much more oval in its overall shape. It does not have rounded corners, the arcs connecting the top and bottom have much deeper curves, and it is only approximately one and a half times wider than it is tall.

    

**Voltstar Patent**          **Amazon Patent**

Additionally, the tapers leading to the USB connector differ significantly. Voltstar's patent depicts an abrupt taper leading to an almost circular plateau that has an opening for a USB cord. The plateau on which the USB opening rests does not mimic the overall shape of the device when looking at the front, and instead it is more circular. Amazon's charger has a more gradual taper that leads to a lip that creates an enclosure for the USB port. Looking from the front, the lip and enclosure it provides almost exactly traces the body shape of the product.



**Voltstar Patent**    **Amazon Patent**

Finally, Voltstar's product has a distinct clamshell appearance due to the horizontal seam separating its top and bottom halves. This design element is especially prominent when examining Figures 5 and 6 of the Voltstar patent, which show a carefully crafted groove. Amazon's design lacks this seam and maintains a smooth aesthetic throughout the product. Instead, it has a vertical seam (as seen in Figures 5-8 of the Amazon patent) that denotes the beginning of its taper at the USB end.



**Voltstar Patent**    **Amazon Patent**

Cumulatively, these differences create a significantly different overall ornamental visual impression for each product to the ordinary observer.

In fact, these differences are more than sufficient to grant summary judgment without examining the prior art in the eyes of many district courts. Courts consistently grant summary judgment based solely on differences between the accused and patented designs. *See, e.g., Sofpool LLC v. Kmart Corp.*, No. S-10-3333 LKK, 2013 WL 2384331, at *1 (E.D. Cal. May 30, 2013); *McIntire v. Sunrise Specialty Co.*, 944 F. Supp. 2d 933, 941-42 (E.D. Cal. 2013); *Competitive Edge*, 763 F. Supp. 2d at 1011-12; *Minka Lighting, Inc. v. Maxim Lighting Int'l, Inc.*, No. 06-cv-995, 2009 WL 691594, at *7 (N.D. Tex. Mar. 16, 2009); *Rainworks Ltd. v. Mill-Rose Co.*, 622 F. Supp. 2d 650, 656 (N.D. Ohio 2009); *HR U.S. LLC v. Mizco Int'l, Inc.*, No. cv-07-2394, 2009 WL 890550, at *13 (E.D.N.Y. Mar. 31, 2009); *see also Schnadig Corp. v. Collezione Europa U.S.A.*, No. 01 C 1697, 2002 WL 31253750, at **13-14 (N.D. Ill. Oct. 4, 2002); *Pacific Handy Cutter, Inc. v. Quick Point, Inc.*, No. cv-96-399, 1997 WL 607501, at **3-4 (C.D. Cal. July 9, 1997). Additionally, at least one court has granted summary judgment without considering prior art where two designs differ in only one significant feature. *Minka Lighting, Inc.*, 2009 WL 691594, at *7.

For these reasons, the Court holds that an ordinary observer familiar with the prior art would find the two designs in question here to be sufficiently dissimilar to grant summary judgment in Defendant's favor on this basis alone. That said, the Court also acknowledges that often "it can be difficult to answer the question whether one thing is like another without being given a frame of reference." *See Egyptian Goddess*, 543 F.3d at 676-77. Providing such a frame of reference, however, simply bolsters the conclusion that there is no infringement in this case.

**III.     Prior Art Analysis**

"When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Egyptian Goddess*, 543 F.3d at 676. This means that the Court will place emphasis on features that deviate from the prior art but are shared amongst the accused and patented designs; however, whether the accused and patented devices are more similar to each other than they are to the prior art is not the dispositive test. *See Wing Shing Prods. Co.*, 665 F. Supp. 2d at 368 (stating that "*Egyptian Goddess* . . . does not require mechanical determination . . . that the accused device is 'closer' to either the patent or the prior art"); *see also Great Neck Saw Mfrs., Inc. v. Star Asia U.S.A., LLC*, 727 F. Supp. 2d 1038, 1057-58 (W.D. Wash. 2010) (granting summary judgment of non-infringement despite the fact that the patented and accused designs were "closer to each other" than they were to the prior art). Instead, *Egyptian Goddess* prompts courts to consider how the prior art will impact the ordinary observer's perception of the accused and patented designs. 543 F.3d at 676, 678.

When comparing the three drawings, it becomes clear that as a general concept the accused and patented designs deviate from the '316 patent in some similar ways. For example, unlike the '316 patent, which has a taper closer to the wall-plug end of the charger, the accused and patented designs have tapers near the USB end. However, once the attention of an ordinary observer familiar with the prior art is drawn to this difference, it is clear to any would-be observer that the Amazon and Voltstar products have significant differences in the way they taper, as previously described. If both the Amazon and Voltstar designs had tapered in the same way, then an inference of infringement might arise. *Egyptian Goddess*, 543 F.3d at 677 ("If the accused design has copied a particular feature of the claimed design that departs conspicuously

9

from the prior art, the accused design is naturally more likely to be regarded as deceptively similar to the claimed design . . . ."). This is not the case here.



| '316 Patent | Voltstar Patent | Amazon Patent |

For its part, Voltstar argues that their product and Amazon's have a taper on the opposite end from that of the prior art. This fact alone, however, does not dictate a finding of infringement. As discussed above, there are significant differences between Voltstar's sudden taper ending in a plateau that houses the USB port as compared to Amazon's gradual taper ending in a lip that surrounds the USB port.

Looking at another feature, an ordinary observer would note that both the Voltstar and Amazon patents depict sides that are more curved than that of the '316 patent. However, the observer would also notice that, as described above, the Amazon design features arcs that have a deeper curve that creates a lozenge or oval effect, while Voltstar's design has much shallower side arcs that create an effect of a flat top and bottom with rounded corners and slightly arced sides. The products seem to form a spectrum from the more box-like '316 patent, to the lozenge-shaped Amazon patent, with the Voltstar patent lying in between as a melding of the two.



| FIG. 5 | FIGURE 5 | FIG. 4 |
| :---: | :---: | :---: |
| '316 Patent | Voltstar Patent | Amazon Patent |

Additionally, while an ordinary observer might note that Figures 1 and 5 of the '316 patent bear a resemblance to Figures 3 and 4 of the Amazon patent, they would also notice that Figure 9 of the '316 patent bears a resemblance to Figure 1 of the Voltstar patent in revealing a squatter proportion. This is to say that, while all three may share some features among them, a reasonable juror could not confuse any of them for each other, including the accused and patented designs. Thus, when the prior art is used to provide context, as delineated by *Egyptian Goddess*, it bolsters the proposition that there is insufficient similarity between the Amazon design and the Voltstar design in order to compel a holding of patent infringement.[1]

That Plaintiff filed an expert report purporting to establish material differences in fact does not foreclose summary judgment. *See Wing Shing Prods. Co.*, 665 F. Supp. 2d at 368 (summary judgment granted over competing expert testimony); *Egyptian Goddess*, 543 F.3d at 681-82 (granting summary judgment over opposing expert affidavit). Furthermore, courts routinely grant summary judgment through a visual determination that the compared products are

---

[1] Voltstar makes much of their assertion that the Amazon product is more similar to Voltstar's than it is to the prior art. Pl. Mot. Summ. J. 11, 13. As delineated above, however, this is not a determinative inquiry. *See Wing Shing Prods. Co.*, 665 F. Supp. 2d at 368; *see also Great Neck Saw Mfrs., Inc.*, 727 F. Supp. 2d at 1057-58. The Court, instead, properly applies *Egyptian Goddess* by considering "how the prior art will impact the ordinary observer's perception of the accused and patented designs" and declining to find infringement because an ordinary observer, familiar with the prior art, would *not* be deceived into thinking that the accused design was the same as the patented design. *Egyptian Goddess, Inc.*, 543 F.3d at 672 (emphasis added).

plainly dissimilar despite expert testimony purporting to establish material fact disputes. *See HR U.S. LLC*, 2009 WL 890550, at *13 ("[E]xpert testimony submitted by a plaintiff cannot create a material issue of fact where the visual comparison reveals that the alleged infringing product is not substantially similar . . . ."); *see also Harel v. K.K. Int'l Trading Corp.*, 12 CIV. 4527 BMC, 2014 WL 119541, at * 2-4 (E.D.N.Y. Jan. 10, 2014) ("[B]ecause a visual comparison alone is sufficient to determine non-infringement under the ordinary observer test, the Court finds that the expert testimony submitted by plaintiffs cannot create a material issue of fact, where the visual comparison reveals that the alleged infringing [product] is not substantially similar to the [claimed design]."). The expert report in this case is particularly unhelpful because it focuses on comparing photographs of the embodiment of Amazon's design to Voltstar's CAD patent. As the Court notes above, however, courts must compare design patents drawing-to-drawing rather than by drawing to commercial embodiments or by verbal descriptions. *Payless Shoesource, Inc.*, 998 F.2d at 990. Thus, the expert report is insufficient to create a disputed statement of material fact for trial.

Using the foregoing analysis and legal standards, the Court holds that an ordinary observer, familiar with the prior art, would be not deceived into thinking that the Amazon design was the same as the Voltstar design. Accordingly, the Court grants Amazon's motion for summary judgment and denies Voltstar's cross-motion.

## Conclusion

For the reasons set forth herein, the Court grants Amazon's motion for summary judgment [21] and denies Voltstar's cross-motion for summary judgment [40]. This case is hereby terminated.

SO ORDERED        ENTER: 7/28/14

*[signature]*

**JOHN Z. LEE**
**United States District Judge**